UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JEFFREY M. MATA,

               Petitioner,                  Case No. 1:13-cv-1304

v.                                       Honorable Robert J. Jonker

JOHN PRELESNIK,

               Respondent.

_____/

**REPORT AND RECOMMENDATION**

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Jeffrey M. Mata is incarcerated with the Michigan Department of Corrections at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Michigan.  Following a jury trial in the Kent County Circuit Court, Petitioner was convicted of first-degree murder, Mich. Comp. Laws § 750.316(b).  According to the prosecutor, the death Petitioner caused rose to the level of first-degree murder because it resulted from Petitioner's perpetration of child abuse in the first-degree, Mich. Comp. Laws § 750.136b(2).   On June 3, 2008, the court sentenced Petitioner to life imprisonment without eligibility for parole, as required by the first-degree murder statute.

        On October 29, 2013, Petitioner filed his habeas corpus petition.  Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court.  *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).  Petitioner signed his application on October 29, 2013.  (Pet., ECF No. 1, PageID.8.)  The petition was received by the Court on December 5, 2013.  For purposes of this Report and Recommendation, I have given Petitioner the benefit of the earliest possible filing date.  *See Brand v. Motley*, 526 F.3d 921, 925

(6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

The petition raises nine grounds for relief, paraphrased as follows:

I.      Petitioner was denied his Fifth Amendment and Due Process rights by the introduction of his oral and written statements obtained without *Miranda* warnings when Petitioner reasonably believed he was not free to leave.

II.     Under the circumstances of this case, the trial court denied Petitioner a fair trial by failing to instruct on specific intent for first-degree child abuse in response to the jury's inquiry, and trial counsel was ineffective for failing to object to the court's response and failing to request the appropriate instruction.

III.    The evidence of felony murder in perpetration of first-degree child abuse is insufficient; the legislature did not intend the use of the very same acts as both the predicate felony and the murder itself, and the statute is unconstitutionally vague.

IV.     The trial court denied Petitioner a fair trial by failing to instruct on second-degree child abuse, and trial counsel's failure to request that instruction denied Petitioner his right to effective assistance of counsel where, had the instruction been given, it is likely that Petitioner would not have been convicted of first-degree felony murder.

V.      The prosecutor's improper comments denied Petitioner a fair trial.

VI.     Petitioner was deprived of his Fourteenth Amendment due process rights when Mexican-Americans were excluded from the jury and thereby denying him a fair trial.

VII.    The trial judge abused his discretion and denied the Petitioner a fair trial when he allowed colored (gruesome) photographs to be admitted into evidence by the prosecution.

VIII.   Petitioner was denied his Sixth Amendment constitutional right to the effective assistance of trial counsel, and is entitled to a *Ginther* hearing to develop a testimonial record to support his claim.

IX.     Petitioner's appellate counsel was ineffective contrary to the Sixth Amendment for failing to properly raise trial counsel's ineffectiveness and develop a complete record for review.

(Pet'r's Br., ECF No. 2, PageID.10-11.)  Respondent has filed an answer to the petition (ECF No. 10) stating that the grounds should be denied because they have been waived, are procedurally defaulted, or lack merit.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless or procedurally defaulted.  Accordingly, I recommend that the petition be denied.

**Discussion**

I.    Factual Allegations

Jennifer Teunis had been living with Petitioner, a co-worker, for a few weeks when, on July 9, 2007, she left her eight-month-old daughter and her five-year-old son in Petitioner's care.  After a few hours, Petitioner called Teunis to inform her that her daughter was struggling to breathe.  Teunis instructed Petitioner to call 911 and arranged to meet them at the hospital. When she arrived, her daughter was struggling to breathe, bruised, and experiencing seizures. The daughter's condition worsened while she was at the hospital.  She died the next day.

In an interview with the police, Petitioner acknowledged he had dropped the infant and had shaken her.  Two physicians, Dr. Debra Simms, a treating physician at the hospital, and Dr. David Start, a forensic pathologist, testified that the injuries the infant suffered were consistent with excessive force and a violent shaking, were consistent with child abuse, and caused her death.

In addition to the testimony from Ms. Teunis and the doctors, the jury heard testimony from the child's grandmother, a first-responder to the 911 call, and two police officers. Although Petitioner did not testify, the jury heard from him by way of a recorded telephone conversation with Ms. Teunis, the recorded interview with the police, and a hand-written statement he provided after the police interview.  By way of the interview and the statement, Petitioner clearly confesses to dropping and shaking the victim.

The jury deliberated for about four hours before they posed a question regarding the instructions.  The instruction that prompted the question was the standard instruction regarding felony murder.  The trial court had instructed the jury as follows:

> The Defendant is charged with first-degree felony murder.  To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt.
>
> First, that the Defendant caused the death of [the child]; that is that [the child] died as a result of the acts of Defendant Mata.
>
> Second, that the Defendant had one of these three states of mind: he intended to kill or he intended to do great bodily harm or he knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of his actions.
>
> And the third element is that when he did the act that caused the death of [the child], the Defendant was committing or attempting to commit the crime of first-degree child abuse.  For the crime of first-degree child abuse, the prosecutor must prove each of the following elements beyond a reasonable doubt: (a) that the Defendant had care of or custody of or authority over [the child]; (b) that the Defendant either knowingly or intentionally caused serious physical harm to [the child]—by serious physical harm, I mean any physical injury to a child that seriously impairs the child's health or physical well-being, including but not limited to brain damage, a skull or bone fracture, subdural hemorrhage or hematoma, dislocation, sprain, internal injury, poisoning, burn or scald, or severe cut—and (c) that [the child] was at the time under the age of 18 years.

(Trial Tr. III, ECF No. 11-8, PageID.452-453.)  The jury sought further explanation of the meaning of "knowingly or intentionally" in the first-degree child abuse instruction.  (*Id.*)  The court explained that those were not terms of art, just everyday words that the jury should interpret the same way they interpreted the words in everyday speech.  (*Id.*, PageID.452.)  The court also repeated the "lesser-included" instructions for second-degree murder and involuntary manslaughter.  (*Id.*, PageID.453.)

The jury returned to its deliberations and rendered its verdict about an hour later.

After Petitioner was sentenced, with the assistance of counsel, he appealed to the Michigan Court of Appeals, raising the first five issues identified above.  By unpublished opinion

4

entered December 29, 2009, the court of appeals affirmed the trial court.  (Mich. Ct. App. Op., ECF No. 11-12, PageID.498-504.)   Petitioner, again with the assistance of counsel, filed an application for leave to appeal in the Michigan Supreme Court raising the same five issues he had raised in the court of appeals.  The Michigan Supreme Court denied leave by order entered July 15, 2010.  (Mich. Ord., ECF No. 11-13, PageID.592.)

Petitioner returned to the trial court.  He filed a pro per motion for relief from judgment raising issues VI-IX above.  By order entered May 11, 2012, the trial court denied relief, concluding that Petitioner had failed to demonstrate good cause for failing to raise these issues on his initial appeal.  (Kent Cty. Cir. Ct. Ord., ECF No. 11-11, PageID.491-497.)   The court also found that Petitioner suffered no prejudice as his issues were without merit.  (*Id*.)   Petitioner sought leave to appeal that ruling, but the Michigan Court of Appeals denied relief by order entered April 18, 2013, (Mich. Ct. App. Ord., ECF No. 11-14, PageID.696), and the Michigan Supreme Court denied relief by order entered September 30, 2013 (Mich. Ord., ECF No. 11-15, PageID.738).  Petitioner then filed the instant petition.

II.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision

that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-382; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in

their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III.    Self-incrimination

The Fifth Amendment of the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that, in order to protect an individual's Fifth Amendment privilege against self-incrimination, when an individual is in custody, law enforcement officials must warn the suspect before his interrogation begins of his right to remain silent, that any statement may be used against him, and that he has the right to retained or appointed counsel. *Id.* at 478-79; *see also Dickerson v. United States*, 530 U.S. 428, 435 (2000); *Stansbury v. California*, 511 U.S. 318, 322 (1994). The test for determining whether an individual is "in custody" for purposes of *Miranda* is objective: whether a reasonable person in the defendant's position, knowing the facts as the defendant knew them, would have felt that he was under arrest or was "otherwise deprived of his freedom in any significant way." *Miranda*, 384 at 477. The determination does not turn on the subjective views of either the interrogating officer or the person being questioned. *Stansbury*, 511 U.S. at 323; *Mason v. Mitchell*, 320 F.3d 604, 631 (6th Cir.

7

2003).  The Sixth Circuit has identified several factors to be considered when determining whether an interrogation was custodial: (1) the location of the interview; (2) the length and manner of the questioning; (3) whether there was any restraint on the individual's freedom of movement; and (4) whether the individual was told that he did not need to answer questions.  *United States v. Hinojosa*, 606 F.3d 875, 883 (6th Cir. 2010) (citing *United States v. Panek*, 552 F.3d 462, 465 (6th Cir. 2009)).

Petitioner complains that his interview was custodial yet he was not provided the *Miranda* warnings.  The custodial factors do not favor Petitioner's position.  The interview was in Petitioner's home, it lasted less than an hour, he was entirely unrestrained, and the officer specifically told Petitioner at the outset: "Now Jeff, ah, obviously, we're just here now to obviously find out what happened.  Um, you're not under arrest.  You're not in custody.  You know, you can leave at any time.  You don't have to talk to us.  You understand all that, right?"  (July 9, 2007 Interview Tr., ECF No. 11-16, PageID.824.)  Petitioner acknowledged that he understood.  (*Id.*)

The court of appeals relied expressly on *Miranda* in rejecting Petitioner's claim.  The court reviewed the totality of the circumstances, including the location, duration and circumstances surrounding the interview, and concluded the interview was not custodial.  (Mich. Ct. App. Op., ECF No. 11-12, PageID.499.)  Petitioner contends he believed the interview was custodial despite those circumstances, but the test is not subjective.  The test for determining whether an individual is "in custody" for purposes of *Miranda* is objective: whether a reasonable person in the defendant's position, knowing the facts as the defendant knew them, would have felt that he was under arrest or was "otherwise deprived of his freedom in any significant way." *Miranda*, 384 at 477; *see also Stansbury*, 511 U.S. at 323; *Mason*, 320 F.3d at 631.

Petitioner has failed to demonstrate: (1) that the state court's findings regarding the custodial factors are unreasonable on this record; or (2) that the state court's determination regarding the custodial environment is contrary to, or an unreasonable application of *Miranda*. Accordingly, Petitioner is not entitled to habeas relief on this issue.

IV.    Specific Intent Instructions for First-degree Child Abuse

Petitioner next complains that the jury instructions regarding intent for first-degree child abuse—the focus of the jury's inquiry during deliberations--somehow fell short.  Not every claimed instructional error rises to the level of a constitutional violation.  "Before a federal court may overturn a conviction resulting from a state trial in which [the challenged] instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."  *Cupp v. Naughten*, 414 U.S. 141, 146 (1973).

The Supreme Court has defined the subcategory of instructional errors that warrant habeas relief very narrowly.  *Estelle v. McGuire*, 502 U.S. 62, 73 (1991) (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990) ("Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.")).  The Due Process Clause requires that every element of the charged crime be proven beyond a reasonable doubt.  *In re Winship*, 397 U.S. 358, 364 (1970).  When a jury is not properly instructed with regard to the elements of the charged crime, the due process right to proof beyond a reasonable doubt is implicated.  *Sandstrom v. Montana*, 442 U.S. 510 (1979).  It is the prerogative of the state, however, to define the elements of the crime and the federal courts are bound by their determination.  *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson v. Virginia*, 443 U.S. 307,

324 n.16 (1979) ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses. Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.").

Here, the state appellate court determined the trial court had met its obligation to instruct on the elements of first-degree child abuse:

> In the instant case, the trial court used the exact language from [Michigan's standard criminal jury instructions] to instruct the jury with regard to the predicate felony of first-degree child abuse. Because the trial court properly instructed the jury, there was no error.

(Mich. Ct. App. Op., ECF No. 11-12, PageID.500.) Moreover, the Michigan courts have expressly rejected the instructional gloss that Petitioner seeks to add. In *People v. Maynor*, 683 N.W.2d 565 (2004), the Michigan Supreme Court stated that "[t]he need to draw the common-law distinction between 'specific' and 'general' intent is not required under the plain language of the [first-degree child abuse] statute, as long as the jury is instructed that it must find that defendant either knowingly or intentionally caused the harm." *Id*., at 569. The trial court instructed Petitioner's jury that it must find Petitioner "knowingly or intentionally" caused the harm. That is all that Michigan law requires. Petitioner's challenge to the intent instruction is meritless under state law and raises no federal constitutional issue. *See Poole v. Stewart*, No. 16-1729, 2017 WL 3014000, at *6-7 (6th Cir. July 14, 2017) (court denied a certificate of appealability where the petitioner raised the same issue Petitioner raises here).

## V. Insufficient Evidence of Felony Murder

Petitioner next contends, for various reasons, that the evidence of first-degree murder was insufficient to support the verdict. A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson*, 443 U.S. at 319,

which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Petitioner's challenge to the sufficiency of the evidence is focused on the intent element discussed above: did he knowingly or intentionally cause harm to the child. Petitioner contends that his conduct was, at most, reckless. Petitioner further argues that such reckless conduct would support a determination of second-degree child abuse, but not first-degree child

abuse.  If Petitioner were to prevail on that argument, he could escape the first-degree felony

murder verdict and, consequently, the sentence of mandatory life without eligibility for parole.

The Michigan Court of Appeals applied a standard identical to *Jackson* and flatly

rejected Petitioner's contentions:

> "A factfinder can infer a defendant's intent from his words or from the act, means,
> or the manner employed to commit the offense. In other words, a defendant's intent
> can be proved by circumstantial evidence." *People v Hawkins*, 245 Mich App 439,
> 458; 628 NW2d 105 (2001). It is for the trier of fact to determine what inferences
> can be fairly drawn from the evidence and to determine the weight to be afforded
> to the inferences. *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).
>
> The evidence in this case shows that the child was a healthy, normal child before
> being left in defendant's care.  A few hours later, the child was having trouble
> breathing, was not responsive, and was seizing. Before calling an ambulance,
> defendant called his girlfriend, asking whether the child had asthma. Later,
> defendant told the police that he accidentally dropped the child and then, when she
> was later crying, shook her.
>
> Physician witnesses testified that the constellation of injuries present in the
> deceased child indicated, to a reasonable degree of medical certainty, that the
> injuries were not accidentally caused, but rather were intentionally inflicted injuries
> that had to have been caused by a force comparable to that of being ejected from
> an automobile during a crash and hitting pavement, or falling three or four stories
> from a building. From this evidence, it was reasonable for the jury to infer that
> defendant either acted with the intention of causing serious physical harm to the
> child or knew that serious physical harm to the child would result from his actions.
> This same evidence also allowed the jury to reasonably infer that defendant
> intended to cause great bodily harm or intended to violently shake the child in
> wanton and willful disregard of the likelihood that the natural tendency of such
> shaking would cause death or great bodily harm. Thus, the evidence was sufficient
> to convict defendant of first-degree felony murder with the predicate felony of first-
> degree child abuse.

(Mich. Ct. App. Op., ECF No. 11-12, PageID.500-501.)

Petitioner does not challenge the state court's determinations of fact as

unreasonable.  Instead, he argues that those facts, if viewed in a way that favors him, support

another inference: that he acted recklessly, not intentionally.  That argument invites the Court to

do that which it cannot.  This Court must view the evidence in a light most favorable to the

prosecution.  Viewed in that light, the evidence supports the inference that Petitioner intended to harm his victim.  Thus, the state court's determination is entirely consistent with, not contrary to, *Jackson*.  Accordingly, Petitioner is not entitled to habeas relief on his sufficiency claim.

VI.    Legislative Intent

As a second part of Petitioner's sufficiency argument, he claims that the Michigan Legislature did not intend the very same acts to serve as both the predicate felony and the murder. Because the same acts were used that way in Petitioner's trial, Petitioner claims the evidence of felony murder was insufficient.  Petitioner's argument fails in its premise.  The state appellate court explained, contrary to Petitioner's unsupported assertion, that the "[Michigan] Legislature intended the same acts used to prove the predicate felony, first-degree child abuse, to be used to prove the murder itself . . . ."  (Mich. Ct. App. Op., ECF No. 11-12, PageID.501.)  As noted above, it is the prerogative of the state to define the elements of the crime and the federal courts are bound by their determination.  *See Johnson*, 559 U.S. at 138; *Jackson*, 443 U.S. at 324 n.16.  Accordingly, Petitioner is not entitled to habeas relief on his "legislative intent" argument.

VII.    Failure to Instruct on Second-degree Child Abuse

Petitioner argues that the trial court should have instructed the jury on second-degree child abuse as a lesser included offense of first-degree child abuse.  In *McMullan v. Booker*, 761 F.3d 662 (6th Cir. 2014), the Sixth Circuit Court of Appeals explained the purpose of lesser included offense instructions as follows:

> Instructing a jury on a lesser offense benefits the prosecution because it can afford the state a conviction when the evidence cannot establish the crime charged or when the jury is reluctant to convict on the harshest charge; this practice also benefits the defendant in that "it affords the jury a less drastic alternative than the choice between conviction of the offense charged and acquittal." *Beck v. Alabama*, 447 U.S. 625, 633 (1980).  A lesser-included-offense instruction provides the jury with a valuable "third option." *Id*. at 634.  For this reason, Michigan, like a number of other states, requires a trial judge to instruct on a lesser included offense if a rational

13

> view of the evidence supports the instruction.  *People v. Cornell*, 466 Mich. 335,
> 646 N.W.2d 127, 139 (2002); *see Beck*, 447 U.S. at 636 n. 12, (collecting state
> cases).

*McMullan*, 761 F.3d at 666-67.

In light of that purpose, Petitioner's argument is difficult to follow.  Petitioner was not charged with first-degree child abuse.  That crime merely served as the predicate felony for Petitioner's felony murder charge.  Moreover, the trial court instructed the jury on the lesser included offenses of second-degree murder and involuntary manslaughter as requested by Petitioner.

The dividing line between first-degree and second-degree child abuse is the intent of the perpetrator.  The dividing line between first-degree felony murder and involuntary manslaughter, the proper charge according to Petitioner's argument to the jury, is also the intent of the perpetrator.  If the jurors concluded that Petitioner acted recklessly, as Petitioner argued, rather than intentionally, as the prosecutor argued, they had "a less drastic alternative than the choice between conviction of the offense charged and acquittal."  *Beck v. Alabama,* 447 U.S. 625, 633 (1980).  They could have found Petitioner guilty of the lesser included offense of involuntary manslaughter.  They did not need to be instructed on the elements of second-degree child abuse to avail themselves of that alternative.  Thus, Petitioner was not deprived of any benefit that lesser included offense instructions might provide.

Even if Petitioner were deprived of some benefit, however, denial of a lesser included offense instruction does not rise to the level of a constitutional violation.  As the Sixth Circuit noted:

> The Supreme Court, however, has never held that the Due Process Clause requires
> instructing the jury on a lesser included offense in a non-capital case.  *See Beck*,
> 447 U.S. at 638 n.14.  Simply put, "the Constitution does not require a lesser-
> included offense instruction in non-capital cases."  *Campbell v. Coyle*, 260 F.3d
> 531, 541 (6th Cir.2001) (citing *Bagby v. Sowders*, 894 F.2d 792, 795–97 (6th

14

Cir.1990) (en banc)).  What is determinative, at any rate, is that the Supreme Court has never so held.

Here, Michigan charged McMullan with first-degree murder.  The trial court instructed the jury on second-degree murder and voluntary manslaughter, and it declined to instruct the jury on involuntary manslaughter.  The jury convicted McMullan of second-degree murder.  Habeas relief is available to McMullan only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." § 2254(a).  Because the Supreme Court has never held that due process requires lesser-included-offense instructions in a non-capital case, McMullan's claim rests on no such federal ground.  Therefore, his claim fails.

*McMullan*, 761 F.3d at 667.  Petitioner's claim fails for the same reason.  The Michigan Court of

Appeals' rejection of Petitioner's lesser included offense instruction argument cannot be said to

be contrary to, or an unreasonable application of, clearly established federal law, because the

Supreme Court has never held that due process requires lesser included offense instructions in non-

capital cases.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

VIII.   Prosecutorial Misconduct

The prosecutor, in closing, argued to the jury as follows:

The Pediatric Intensive Care Specialists at DeVos Children's Hospital worked on this child.  [She] is seizing and posturing.  She's not responding.  They find the bleeding inside the head, the retinal hemorrhage.  Again, this is a constellation that is the force of a car crash, of a fall from many stories, not just two stories.  This isn't, "Oh, I'm so angry with you."  The reason I went through all of that with you during jury selection is because we've been there, we've done that.  We've been really upset with our kids.  You bet we have.  And not one of them have ended up in the hospital.  This isn't, "Oh, my goodness, that could be me sitting here," 'cause we've been there.  <u>This is a man who hates that child.  He doesn't like that child, but he has to be good around her because he loves the mother.  His whole concern during this statement was, "I—I still want to have sex with her and have a family with her.  I still want to be in her life.  I don't want to get in trouble."  This is a man who hated that child.</u>  He delivered enough force to her head like a high-speed car crash where the child's ejected from the car or a fall from many stories, not just two, to her head multiple times.

(Trial Tr. IV, ECF No. 11-8, PageID.440.)  Petitioner takes issue with the underlined statements.

(Pet'r's Br., ECF No. 2, PageID.43.)  He also takes issue with the prosecutor's argument that

Petitioner's theory did not match the evidence.  She argued:

15

> [Defense counsel] says that he's addressed every piece of the puzzle and given you a plausible explanation.  No he hasn't.  He only wishes that the evidence was as he just explained it to you.  He only wishes that his client had said on the 30th time the detective prompted him, "I was frustrated.  I was, you know—I was panicked.  I—I—I lost it.  I'm sorry."  Don't we all wish that he had said that?  He didn't prove that.  That didn't come in from the evidence.  He only wishes that was in the evidence.  You heard the evidence on his tape.

(Trial Tr. IV, ECF No. 11-8, PageID.445.)  Petitioner claims the prosecutor's argument shifted the burden of proof to him.  (Pet'r's Br., ECF No. 2, PageID.44.)

Misconduct by a prosecutor can rise to the level of a due process violation.  *Lundy v. Campbell*, 888 F.2d 467, 474 (6th Cir. 1989).  However, before habeas corpus relief becomes available, the misconduct must be so egregious as to deny petitioner a fundamentally fair trial. *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993).  The habeas court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental.  *See United States v. Young*, 470 U.S. 1, 11-12 (1985).  In addition, the court may view any misconduct in light of the strength of the competent proofs tending to establish guilt.  *See Angel v. Overburg*, 682 F.2d 605, 608 (6th Cir. 1982) (*en banc*).  "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'"  *Serra*, 4 F.3d at 1355 (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).

It is well-settled that a prosecutor may not shift the burden of proof to the defendant, *Patterson v. New York*, 432 U.S. 197, 215 (1977), or imply that the defendant has "any obligation to produce evidence to prove his innocence."  *Joseph v. Coyle*, 469 F.3d 441, 474 (6th Cir. 2006) (quoting *United States v. Clark*, 982 F.2d 965, 968–969 (6th Cir. 1993) ).  Nonetheless, prosecutors "must be given leeway to argue reasonable inferences from the evidence." *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000) (quoting *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir.

1996)).  Thus, a prosecutor is free to argue from the evidence that certain defense witnesses are lying, but may not denigrate the defense or defense counsel.  *See Hanna v. Price*, 245 F. App'x 538, 545-46 (6th Cir. 2007); *Bates v. Bell*, 457 F.3d 501, 525 (6th Cir. 2006).   Not every aspersion cast by a prosecutor upon a defense attorney's presentation of a case requires reversal of the guilty verdict.  *See Young*, 470 U.S. at 11 (stating that "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial").  And, even if the prosecutor crosses the line, the giving of cautionary instructions is relevant to determining whether fundamental fairness was denied.  *Serra*, 4 F.3d at 1356.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974)).  Thus, to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington*, 562 U.S. at 103).

The Michigan Court of Appeals' resolution of the issue tracks this clearly established federal law:

Defendant contends that the prosecution's comments during closing argument that he was uncaring and hated the victim improperly denigrated him.  The prosecution is not permitted to denigrate a defendant with "intemperate and prejudicial remarks."  *People v. Bahoda*, 448 Mich. 261, 283, 531 N.W.2d 659 (1995).  Although the prosecution may not make a factual statement to the jury that is not supported by the evidence, *People v. Ackerman*, 257 Mich.App. 434, 450, 669 N.W.2d 818 (2003), prosecutors are afforded great latitude during argument, and they may argue the evidence and all reasonable inferences that arise from the evidence in relationship to their theory of the case.  *Id*. at 282, 669 N.W.2d 818.  Here, the evidence supported the prosecution's argument.

While defendant's girlfriend testified that defendant treated the victim and her other child like his own children, and that he was loving, kind, considerate, and thoughtful to them, there was also evidence that the victim's grandmother observed bruises on the victim shortly after defendant began watching her.  The physicians' testimony regarding the extent and cause of the victim's injuries and her resulting death also supported an inference that defendant was uncaring and/or may have hated the child.

Defendant also argues that the prosecution misstated the evidence and injected issues broader than his guilt or innocence into the trial by stating that defendant's "whole concern during his statement was, 'I-I still want to have sex with [Teunis] and have a family with her.  I still want to be in her life.  I don't want to get in trouble.'"  While the prosecutor did include a reference to sex in defendant's statement, isolated remarks that are not blatant or so inflammatory as to prejudice the defendant, such as the one at issue, will not rise to the level of prosecutorial misconduct.  *People v. Watson*, 245 Mich.App. 572, 591, 629 N.W.2d 411 (2001).  Moreover, the court properly instructed the jury that the lawyers' statements and arguments were not evidence that could be considered during deliberations.  Therefore, the instructions cured any potential prejudice.  *People v. Long*, 246 Mich.App. 582, 588, 633 N.W.2d 843 (2001).

Finally, defendant contends that the prosecution argued that defendant did not prove his defense, thereby impermissibly shifting the burden of proof to defendant.  "In a closing argument a prosecutor may comment upon the evidence presented at trial and upon the witnesses' credibility."  *People v. Green*, 131 Mich.App. 232, 236-237, 345 N.W.2d 676 (1983).  However, the prosecution may not suggest that defendant must prove something, or explain damaging evidence, as it tends to shift the burden of proof.  *Id*. at 237, 345 N.W.2d 676.  Although, merely commenting on weaknesses in the defendant's defense does not shift the burden of proof to the defendant.  *People v. Fields*, 450 Mich. 94, 112, 538 N.W.2d 356 (1995).

In this case, the prosecution was attempting to comment on the weakness of defendant's defense.  The prosecution did not shift the burden of proof.  Even if we were to agree that the prosecutor misstated the facts when making the challenged argument, that misconduct did not prejudice defendant because the court's

instructions cured any alleged prejudice to defendant.  *Long, supra*. There was no plain error requiring reversal.

(Mich. Ct. App. Op., ECF No. 11-12, PageID.503-504.)

The appellate court's findings are not unreasonable on this record.  The severity of the victim's injuries allow an inference that the person who caused them was motivated by vehement emotion, such as hate.   Similarly, Petitioner's statements during his interview demonstrate his strong desire to continue the relationship with Ms. Teunis, a relationship that he told the police involved sleeping together.  Petitioner claimed he wanted to have a family with Ms. Teunis and also specifically stated: "I wanna be with her."   (Interview Tr., ECF No. 11-16, PageID.839.)  The prosecutor's argument that Petitioner wanted to continue his sexual relationship with the victim's mother can be inferred from Petitioner's interview statements.  Finally, the prosecutor's statements that Petitioner's counsel did not have the evidence to support Petitioner's claim that he lost his cool and acted recklessly, was also nothing more than permissible comment on the evidence.  The officer interviewing Petitioner invited Petitioner to state precisely that, but Petitioner refused: "Man, I didn't lose my cool or nothin'."  (*Id.*, PageID.838.)

Put simply, the prosecutor's comments do not evidence misconduct.  Moreover, the trial court instructed the jury that such arguments are not evidence.  Thus, even if the comments crossed the line, it did not render Petitioner's trial fundamentally unfair.  Petitioner has failed to show that the Michigan Court of Appeals' rejection of his prosecutorial misconduct claim is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, he is not entitled to habeas relief on this claim.

IX.    Systematic Exclusion of Mexican-Americans from the Jury Pool

Petitioner claims that none of the members of his jury venire were Mexican-American.  (Pet'r's Br., ECF No. 2, PageID.45.)  For that reason, Petitioner claims his trial violated

the Sixth Amendment right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community.

In *Taylor v. Louisiana*, 419 U.S. 522 (1975), the Supreme Court held that "the Sixth Amendment affords the defendant in a criminal trial the opportunity to have the jury drawn from *venires* representative of the community . . . ."  *Id.* at 537.  In order to establish a prima facie violation of the fair-cross-section requirement, a defendant must demonstrate three elements: (1) that the group alleged to be excluded is a "distinctive group" in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.  *Duren v. Missouri*, 439 U.S. 357, 364 (1979).  When potential jurors are systematically excluded from the jury pool on the basis of race, structural error occurs.  *Vasquez v. Hillery*, 474 U.S. 254, 263-64 (1986).

Petitioner raised this issue for the first time in his motion for relief from judgment. The trial court refused to consider any of Petitioner's issues because he had failed to raise them on his direct appeal and had failed to establish either good cause for that failure or resulting prejudice. (Kent Cty. Cir. Ct. Ord., ECF No. 11-11, PageID.493, 497.)   The court explained that Petitioner's "claims are procedurally barred under MCR 6.508(D)(3)."  (*Id.*, PageID.497.)

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982).  To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent

and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim.  *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).  In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).  Here, the last reasoned state-court decision is the trial court's order resolving Petitioner's motion for relief from judgment.

There is no question that Petitioner failed to comply with the requirement to raise his post-judgment motion issues on direct appellate review; thus, he failed to follow the state procedural rule.  The state court expressly relied upon Petitioner's default in denying his claim.  It is also beyond dispute that the procedural rule is an adequate and independent ground for denying relief.  A rule is an adequate and independent ground when it was "firmly established and regularly followed" at the time of the asserted procedural default.  *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)).  Mich. Ct. Rule 6.508(D)(3) "was firmly established and regularly followed . . . and was an adequate and independent state ground for denying review."  *Gates v. Hoffner*, No. 17-2198, 2018 WL 1614261, at *2 (6th Cir. Mar. 23, 2018) (citing *Simpson v. Johnson*, 238 F.3d 399, 407 (6th Cir. 2000)).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice.  *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52.  The miscarriage-of-justice exception only can be met in an "extraordinary" case where a

prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Petitioner does not contend he is actually innocent; rather, he claims he is guilty of a lesser crime.

Petitioner offers the ineffective assistance of his appellate counsel as cause for his procedural default. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Here, appellate counsel's failure to raise the "fair cross section" issue does not constitute deficient performance. Michigan requires an objection to the jury venire before the jury

22

has been impaneled and sworn to preserve a "fair cross section" challenge. *Ambrose v. Booker*, 684 F.3d 638, 645 (6th Cir. 2012) (citing *People v. Dixon*, 552 N.W.2d 663, 667 (Mich. Ct. App. 1996)). No such objection was made here. If appellate counsel had raised the claim it would have been rejected as unpreserved.

Where a claim lacks merit, appellate counsel is not ineffective in declining to raise the issue on direct appeal. *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit."); *Burton v. Renico*, 391 F.3d 764, 781-82 (6th Cir. 2004) (where claim of prosecutorial misconduct lacks merit, counsel is not ineffective in declining to raise issue on appeal). Accordingly, Petitioner's appellate counsel was not ineffective for failing to raise the "fair cross section" argument on Petitioner's direct appeal.

Perhaps in recognition of appellate counsel's justifiable decision to forego a meritless "fair cross section" argument, Petitioner also offers as cause appellate counsel's failure to raise a claim of ineffective assistance of trial counsel premised upon trial counsel's failure to object to the jury venire. That "cause" shifts the analysis to the reasonableness of trial counsel's performance.

Any trial counsel considering a "fair cross section" challenge to the Kent County jury selection system at the time of Petitioner's trial would not have been writing on a blank slate. The jury system in Kent County had systematically excluded a significant part of the population of Kent County during 2001 and 2002. *See, e.g., Garcia-Dorantes v. Warren*, 801 F.3d 584 (6th Cir. 2015); *Ambrose*, 684 F.3d at 638. That problem, however, had been corrected.

Other than Petitioner's unsupported, and likely unsupportable, statement that there were no Mexican-Americans on his jury venire, Petitioner offers nothing to support his assertion

that he was denied a "fair cross section."  Petitioner does not explain the source of his knowledge

that there were no Mexican-Americans on his venire. But, even if Petitioner were correct, the "fair

cross section" requirement does not apply to a particular venire, it applies to the pool from which

the jury is drawn.  *Ambrose*, 684 F.3d at 645.  The composition of a single venire panel is irrelevant.

*Id*.  The *Ambrose* court's analysis is particularly instructive here:

> It may be true that a venire panel's composition may put a petitioner on notice of a
> procedural irregularity in some instances, for example in areas where the minority
> population is so high that the probability of an all-white panel is minuscule.
> However, where the minority population is comparatively small, the actual
> composition of the venire panel does not provide reasonable notice of the existence
> or non-existence of a fair cross-section claim.  As the district court persuasively
> stated in *Ambrose*:
>
> > [R]equiring a defendant to make a contemporaneous objection based
> > simply on an anecdotal view of the jury's racial composition defies logic;
> > any individual panel could over represent a "distinctive" group even
> > though the group might be underrepresented in the jury venire as a whole.
> > A gaze into the jury gallery tells you nothing and, in fact, can be
> > misleading.  To also suggest that an effective defense attorney must
> > investigate the jury assembly process in every case conditioned upon his
> > client's loss of the right is unnecessary and wasteful.
>
> *Ambrose v. Booker*, No. 06–13361–BC, 2011 WL 1806426, at *2 (E.D. Mich. May
> 11, 2011).  Here, each petitioner saw only one venire panel, which did not alert any
> of the petitioners to the systematic underrepresentation.

*Ambrose*, 684 F.3d at 646.  The *Ambrose* court noted that the percentage of African-Americans in

Kent County was sufficiently small that the absence of African-Americans in a particular jury

venire would not give notice of a "fair cross section" claim.  The numbers offered by Petitioner

indicate that the percentage of Mexican-Americans in Kent County is smaller than the percentage

of African-Americans.  *A fortiorari*, the absence of a Mexican-American juror from the venire

does not give notice of a "fair cross section" claim either.  Put simply, under the circumstances,

trial counsel's failure to pose an objection to the jury venire was not unreasonable.  Petitioner has

failed to show that his trial counsel was ineffective for failing to object to the jury and,

24

consequently, he has failed to show that his appellate counsel was ineffective for failing to raise trial counsel's failure to pose the objection.    There is no cause for Petitioner's failure to raise his claim on direct appeal.  Therefore, his claim is barred by the doctrine of procedural default.

X.    Gruesome photographs

Petitioner next complains that his trial was rendered unfair by the admission into evidence of photographs of the victim's head with the scalp pulled back showing the child's skull. (Pet'r's Br., ECF No. 2, PageID.50.)  Although Petitioner references photographs, a review of the trial transcript indicates that only one photograph matches his description, Exhibit 8; the rest were photographs of the victim's external injuries.  (Trial Tr. I & II, ECF Nos. 11-6, 11-7, PageID.398, 401, 413-415.)  Plaintiff contends that admission of the photograph creates a danger that "vivid and gruesome images of the victim (an 8-month-old child) will cause a jury to forget that the defendant did not mean to cause harm, or to hurt [the child]."  (Pet'r's Br., ECF No. 2, PageID.50.) It was undoubtedly the prosecutor's intention to do precisely that—present the photograph demonstrating the extent of the injuries to convince the jury that Petitioner intended to cause harm.

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle*, 502 U.S. at 62, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.* at 68.  State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  *Seymour*

*v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  This approach accords the state courts wide latitude in ruling on evidentiary matters.  *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Petitioner was not denied a fundamentally fair trial by the admission of the photograph of the victim's injuries.  The photograph was relevant to illustrating trial testimony regarding the victim's injuries.  The Sixth Circuit has found no due process violation in far more extreme cases involving photographs of murder victims.  *See, e.g. Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005) (holding that admission of photographs depicting murder victim's severed head, her severed head held near her torso and severed breast, and her torso with her severed head and severed breast replaced on torso, did not deprive defendant of fair trial, and thus did not warrant federal habeas relief).  Accordingly, Petitioner's claim falls far short of a due process violation.

Moreover, habeas review of the claim is barred by Petitioner's procedural default.  Again, he offers as cause for his failure to raise the issue on direct appeal the ineffective assistance of his appellate and trial counsel.  Because the photograph was relevant, however, it was not unreasonable for either counsel to fail to challenge its admission.

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

**<u>Recommended Disposition</u>**

For the foregoing reasons, I recommend that the habeas corpus petition be denied.

I further recommend that a certificate of appealability be denied.


Dated:  __August 28, 2018__                    __/s/ Ray Kent_____
                                              Ray Kent
                                              United States Magistrate Judge

**<u>NOTICE TO PARTIES</u>**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).